**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECHNOLOGY, LLC and PANOPTIS PATENT MANAGEMENT, LLC,** | |
| **Plaintiffs,** | **CIVIL ACTION NO.** |
| **v.** | **2:16-cv-61** |
| **KYOCERA COMMUNICATIONS, INC., KYOCERA INTERNATIONAL, INC. and KYOCERA CORPORATION,** | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

<u>**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiffs Optis Wireless Technology, LLC and PanOptis Patent Management, LLC, (collectively, "Plaintiffs" or "PanOptis"), file this Original Complaint for Patent Infringement under 35 U.S.C. § 271 against Kyocera Corporation, Kyocera Communications, Inc., and Kyocera International, Inc., (collectively, "Defendants" or "Kyocera"), and allege as follows:

<u>**THE PARTIES**</u>

1.     Plaintiff Optis Wireless Technology, LLC ("Optis Wireless") is a limited liability company organized and existing under the laws of the State of Delaware, and

maintains its principal place of business at 7160 Dallas Parkway, Suite 250, Plano, Texas 75024.

2.      Plaintiff PanOptis Patent Management, LLC ("PPM") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 7160 Dallas Parkway, Suite 250, Plano, Texas 75024.

3.      On information and belief, Defendant Kyocera Corporation ("Kyocera Corp.") is a corporation organized and operating under the laws of the country of Japan with its principal place of business at 6 Takeda Tobadono-cho, Fushimi-ku, Kyoto, Japan. Kyocera Corp. manufactures, imports into the United States, sells and/or offers for sale in the United States mobile telephones for use in a mobile communications network.   In addition, Kyocera Communications' mobile telephones for use in a mobile communications network are marketed, offered for sale, and/or sold throughout the United States, including within this District.   Kyocera Corp. can be served with process by serving the Texas Secretary of State.

4.      On information and belief, Defendant Kyocera Communications, Inc. ("Kyocera Communications") is a corporation organized under the laws of the state of Delaware with its principal place of business at 9520 Towne Centre Drive, San Diego, CA 92121.  Kyocera Communications manufactures, imports into the United States, sells and/or offers for sale in the United States mobile telephones for use in a mobile communications network.   In addition, Kyocera Communications' mobile telephones for use in a mobile communications network are marketed, offered for sale, and/or sold throughout the United States, including within this District.  Kyocera Communications can be served with process

through its registered service agent, Corporation Service Company d/b/a CSC-Lawyers Inco

at 211 E. 7th Street, Suite 620, Austin, TX 78701.

5.      On information and belief, Defendant Kyocera International, Inc. ("Kyocera International"), is a corporation organized under the laws of the State of California with its principal place of business at 8611 Balboa Avenue, San Diego, CA 92123-1580.  Kyocera International manufactures, imports into the United States, sells and/or offers for sale in the United States mobile telephones for use in a mobile communications network.  In addition, Kyocera International's mobile telephones for use in a mobile communications network are marketed, offered for sale, and/or sold throughout the United States, including within this District.  Kyocera International can be served with process through its registered service agent, Corporation Service Company, d/b/a/ CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## JURISDICTION AND VENUE

6.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 1338(a), 2201, and 2202.

7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(b).

8.      This Court has personal jurisdiction over Defendants.  Defendants have conducted and do conduct business within the State of Texas.  Defendants, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, and/or sell, and advertise (including the provision of an interactive web page) their products and/or services in the United States, the State of Texas, and the Eastern District of Texas.  Defendants, directly and through subsidiaries or intermediaries

(including distributors, retailers, and others), have purposefully and voluntarily placed one or more of their infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Defendants have committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

### THE PATENTS

9.      United States Letters Patent No. 8,064,919 ("the '919 Patent"), entitled "Radio Communication Base Station Device and Control Channel Arrangement Method," was duly and legally issued after full and fair examination to inventors Masaru Fukuoka, Akihiko Nishio, Seigo Nakao, and Alexander Golitschek Edler Von Elbwart on November 22, 2011.  Optis Wireless owns by assignment the entire right, title, and interest in the '919 Patent, is entitled to sue for past and future infringement and possesses the right to license the '919 Patent, a copy of which is attached as Exhibit A.

10.     United States Letters Patent No. 8,199,792 ("the '792 Patent"), entitled "Radio Communication Apparatus and Response Signal Spreading Method," was duly and legally issued after full and fair examination to inventors Seigo Nakao, Daichi Imamura, Akihiko Nishio, and Masayuki Hoshino on June 12, 2012.  Optis Wireless owns by assignment the entire right, title, and interest in the '792 Patent, is entitled to sue for past and future infringement and possesses the right to license the '792 Patent, a copy of which is attached as Exhibit B.

11.     United States Letters Patent No. 7,783,949 ("the '949 Patent"), entitled "Method and Apparatus for Controlling a Transport Format of a Retransmission," was duly

and legally issued after full and fair examination to inventors Joachim Lohr, Eiko Seidel and Dragan Petrovic on August 24, 2010.  Optis Wireless owns by assignment the entire right, title, and interest in the '949 Patent, is entitled to sue for past and future infringement and possesses the right to license the '949 Patent, a copy of which is attached as Exhibit C.

12.     United States Letters Patent No. 6,865,191 ("the '191 Patent"), entitled "System and Method for Sending Multimedia Attachments to Text Messages in Radiocommunication Systems," was duly and legally issued after full and fair examination to inventors Henrik Bengtsson and Ivan Medved on March 8, 2005.  Optis Wireless owns by assignment the entire right, title, and interest in the '191 Patent, is entitled to sue for past and future infringement and possesses the right to license the '191 Patent, a copy of which is attached as Exhibit D.

13.     The '919, '792, '949, and '191 Patents (collectively, the "Asserted Patents") are each valid and enforceable.

14.     By way of written agreement between PPM and Optis Wireless, PPM possesses the rights to negotiate and execute licenses for each of the Asserted Patents.

**FACTUAL BACKGROUND**

15.     The Asserted Patents cover inventions relating to wireless communications, mobile telephones and other devices for use in a mobile communications network.

16.     The Defendants have imported into the United States, marketed, offered for sale and/or sold in the United States, mobile telephones for use in a mobile communications network that infringe the Asserted Patents, or induce or contribute to the infringement of the Asserted Patents by others.

17.     The Defendants have been placed on actual notice of one or more of the Asserted Patents.  The filing of this Complaint also constitutes notice in accordance with 35

U.S.C. § 287.  Despite such notice, the Defendants continue to import into, market, offer for sale and/or sell in the United States products that infringe the Asserted Patents.

18.     The Defendants have, and continue to, directly and indirectly infringe the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 287(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, testing, selling and/or offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain infringing mobile communication devices, including but not limited to Defendants' mobile phones, which incorporate the functionalities and compositions described in detail in Counts I-IV (collectively, "Kyoera Mobile Communication Devices").

19.     The infringing Kyocera Mobile Communication Devices include, but are not limited to, DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, Hydro ELITE, Hydro EDGE, Event, Rise, Jitterbug Touch, and all variations thereof.

20.     Defendants' acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from Defendants the damages sustained by Plaintiffs as a result of Defendants' wrongful acts.

## PLAINTIFFS' LTE STANDARDS-ESSENTIAL PATENTS

21.     Plaintiffs incorporate by reference paragraphs 1-20 as if fully set forth herein.

22.     The European Telecommunications Standards Institute ("ETSI") is a standard setting organization ("SSO") that produces globally-accepted standards for the telecommunications industry.  ETSI is an organizational partner of the Third Generation Partnership Project ("3GPP"), which maintains and develops globally applicable technical

specifications for mobile systems, including the specifications for implementation and use of wireless communications for high-speed data referred to as the Long Term Evolution ("LTE") Standards.

23.     Implementation and use of the LTE Standards, including but not limited to use of wireless communications for high-speed data compliant with the LTE specifications as detailed in the 3GPP specification series TS 36.101-36.978, has increased in recent years and continues to increase at a rapid pace.

24.     ETSI has developed and promulgated an IPR Policy (found at Annex 6 to the ETSI Rules of Procedure, published November 19, 2014). This policy is intended to strike a balance between the needs of standardization for public use in the field of telecommunications on the one hand, and the rights of IPR owners on the other hand. ETSI requires its members to disclose the patents that "are or become, and remain ESSENTIAL to practice" its standards or technical specifications. Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."

25.     Optis Wireless is the assignee of numerous patents, originally assigned to either Telefonaktiebolaget LM Ericsson ("Ericsson") or Panasonic Corporation ("Panasonic"), that are, and remain, essential (as defined by ETSI) to practicing the LTE Standards.

26.     Panasonic, the original assignee of the '919, '949 and '792 Patents (collectively, "LTE Essential Patents"), declared these patents as essential to practicing the LTE Standards.  Optis Wireless, upon acquisition of the '919, '949 and '792 Patents from Panasonic, re-declared these patents to ETSI as essential to practicing the LTE Standards, in conformance with ETSI's IPR Policy.

27.     Plaintiffs, in conformance with ETSI's IPR Policy, have informed Defendants that Plaintiffs are prepared to grant Defendants an irrevocable license under the LTE Essential Patents on terms and conditions that are Fair, Reasonable and Non-Discriminatory ("FRAND").

28.     Defendants require a license to Plaintiffs' LTE Essential Patents because Kyocera Mobile Communication Devices are configured to, and do, operate in compliance with the LTE Standards, and thus infringe the LTE Essential Patents.

29.     Plaintiffs have engaged in good-faith efforts to license Kyocera on FRAND terms.  On January 22, 2015, representatives from Plaintiffs, at their own expense, traveled from Texas to meet with Kyocera representatives in Yokohama, Japan.  During that meeting, Plaintiffs presented, in good faith, materials concerning Plaintiffs' LTE Essential Patents, along with FRAND terms and conditions for a license under them.  Defendants, however, were not interested in taking a license and were openly contemptuous of Plaintiffs' presentation and licensing overtures.  Plaintiffs offered to provide Defendants with in-depth technical analysis, including patent claim charts and access to technical experts demonstrating the applicability of the LTE Essential Patents to Defendants' products, under the protection of a mutual non-disclosure and standstill agreement.  Plaintiffs' mutual non-disclosure and standstill agreement was necessary, not only to protect Plaintiffs' proprietary

technical information and analyses of patent claims from potentially harmful disclosures or misuse by Defendants, but to also prevent Defendants from filing preemptive declaratory judgment or similar actions using the proprietary and confidential information provided by Plaintiffs.  Such agreements are customary in the field and PanOptis has entered numerous agreements with other potential licensees without incident.  Defendants initially refused to consider such an agreement because they were unwilling to be restrained.   After initial refusals, Defendants eventually acquiesced to the idea of such an agreement after Plaintiffs explained that it was a customary practice and that Defendants' refusal was peculiar.  On February 9, 2015, Plaintiffs provided Defendants via email with their standard mutual non-disclosure and standstill agreement agreed to by other potential licensees, along with lists of all of Plaintiffs' Standard- Essential Patent assets worldwide.  However, on February 20, 2015, Defendants returned a copy of the agreement, striking in its entirety the provision that would have prevented Defendants from using any of Plaintiffs' confidential information to support a declaratory judgment or other action to attack Plaintiffs' patents.  In light of Defendants' continued and openly hostile behavior, it was clear that further negotiation was not possible.

30.     To date, Kyocera has not reciprocated Plaintiffs' good-faith efforts. Kyocera has instead resisted taking a license to Plaintiffs' valuable intellectual property.

31.     Kyocera has been operating and continues to operate without a license to Plaintiffs' LTE Essential Patents.  Given Kyocera's unwillingness to engage in meaningful licensing discussions to license Plaintiffs' LTE Essential Patents, or to cease infringing Plaintiffs' patents, Plaintiffs have filed this lawsuit for the purpose of protecting their patent rights in the United States.

## COUNT I.

## CLAIM FOR PATENT INFRINGEMENT OF THE '919 PATENT

32.     PanOptis repeats and realleges the allegations in paragraphs 1-31 as though fully set forth herein.

33.     Defendants have directly infringed and continue to directly infringe the '919 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '919 Patent including, but not limited to, mobile telephones.  The accused wireless communication devices that infringe the one or more claims of the '919 Patent include, but are not limited to, DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE. Further discovery may reveal additional infringing products and/or models.

34.     Defendants have and continue to indirectly infringe the '919 Patent by inducing infringement by others of one or more claims, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

35.     Kyocera received actual notice of the '919 Patent at least as early as February 9, 2015, by way of correspondence that Optis Wireless sent to Kyocera.

36.     Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '919 Patent.

37.     For example and without limitation, operation and use of the Kyocera Mobile Communication Devices (including but not limited to DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque$^{XT}$, Brigadier, Hydro LIFE,

Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE), which incorporate functionalities and associated software and hardware components installed and configured by Kyocera in compliance with the LTE Standards, including but not limited to 3GPP TS 36.201 Sections 1 and 4, 3GPP TS 36.331 Section 4, 3GPP TS 36.211 Section 6, 3GPP TS 36.212 Section 5, 3GPP TS 36.213 Sections 8 and 9,  infringe one or more claims of the '919 Patent, including but not limited to claim 1.[1] The use and operation of these Kyocera Mobile Communication Devices by Kyocera, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '919 Patent.

38.     Kyocera's affirmative acts of selling the Kyocera Mobile Communication Devices, causing the Kyocera Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the Kyocera Mobile Communication Devices have induced and continue to induce Kyocera's manufacturers, resellers, and end-users to make or use the Kyocera Mobile Communication Devices in their normal and customary way to infringe one or more claims of the '919 Patent.

39.     Through its manufacture and sale of the Kyocera Mobile Communication Devices, Defendants specifically intend that Kyocera's manufacturers, resellers and end-users directly infringe one or more claims of the '919 Patent.  Kyocera has knowledge of the '919 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe by using, selling exporting, supplying and/or distributing within the United States Kyocera Communication Devices for resale to others, such as resellers and end-use customers.  Kyocera is aware that such actions would induce actual

---

[1] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

infringement.  Further, Defendants remain aware that these normal and customary activities would infringe the '919 Patent.

40.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the Kyocera Mobile Communication Devices, Defendants willfully provide manuals and support to resellers and end-use customers regarding the use and operation of Kyocera's products in a way that infringes one or more claims of the '919 Patent.  Specifically, Kyocera willfully provides manuals and support through sales of the Kyocera Communication Devices, through its website http://www.kyoceramobile.com/[2], by telephone, and through other means of communication.   When resellers and end-use customers follow such instructions and support, they directly infringe the '919 Patent.  Kyocera knows or should have known that by willfully providing such instructions and support, resellers and end-use customers follow those instructions and support, and directly infringe the '919 Patent.

41.     Accordingly, Kyocera has performed and continues to perform the acts that constitute indirect infringement, and would induce actual infringement, with the knowledge of the '919 Patent and with knowledge or willful blindness to the fact that the induced acts would constitute infringement.

42.     Kyocera indirectly infringes one or more claims of the '919 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use

---

[2] For example, the Kyocera Hydro AIR manual is available at http://www.kyoceramobile.com/hydro-air/Hydro-AIR-User-Guide-ATT_en.pdf (last accessed December 3, 2015). Kyocera includes instructions to a user or reseller of the Hydro AIR, and is aware that the '919 Patent is infringed when those instructions are followed. Manuals and support for each of the infringing Kyocera Mobile Communications Devices are available at www.kyoceramobile.com.

customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

43.    Direct infringement of one or more claims of the '919 Patent is the result of activities performed by Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices.

44.    The Kyocera Mobile Communication Devices (including but not limited to DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque[XT], Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE), which incorporate functionalities and associated software and hardware components installed and configured by Kyocera in compliance with the LTE Standards, including but not limited to 3GPP TS 36.201 Sections 1 and 4, 3GPP TS 36.331 Section 4, 3GPP TS 36.211 Section 6, 3GPP TS 36.212 Section 5, 3GPP TS 36.213 Sections 8 and 9, infringe one or more claims of the '919 Patent, including but not limited to claim 1.[3]  On information and belief, these functions and operations cannot work in an acceptable manner absent theses software and hardware components that Defendants configure, install, and include in the Kyocera Mobile Communication Devices for the purposes of performing such functions and operations.  On information and belief, Kyocera has designed, configured, and installed such software and hardware to entice users of the Kyocera Mobile Communication Devices to use and operate these functionalities and to do so in a manner compliant with the LTE Standards.

45.    The software and hardware components installed and configured by Kyocera in compliance with above LTE Standards, do not constitute a staple article or commodity of

---

[3] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

commerce.  Moreover, use of the same is required for the operation of a Kyocera Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

46.     The software and hardware components installed and configured by Defendants in compliance with the above LTE Standards are each a material part of the invention of the '919 Patent, are especially made for the infringing manufacture, sale and use of Kyocera Mobile Communication Devices, and have no substantial non-infringing uses.

47.     Accordingly, Defendants offer to sell, or sell within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '919 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.   Defendants provide to others Kyocera Mobile Communication Devices with distinct and separate components that have no substantial non-infringing uses.

48.     Defendants' continued infringement of the '919 Patent has damaged and will continue to damage PanOptis.

## COUNT II.

## CLAIM FOR PATENT INFRINGEMENT OF THE '792 PATENT

49.     PanOptis repeats and realleges the allegations in paragraphs 1-48 as though fully set forth herein.

50.     Defendants have directly infringed and continue to directly infringe the '792 Patent by making, using, selling, offering for sale, or importing into the United States, or by

intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '792 Patent including, but not limited to, mobile telephones. The accused wireless communication devices that infringe the one or more claims of the '792 Patent include, but are not limited to, at least DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque[XT], Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE. Further discovery may reveal additional infringing products and/or models.

51.  Defendants have and continue to indirectly infringe the '792 Patent by inducing infringement by others of one or more claims, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

52.  Kyocera received actual notice of the '792 Patent at least as early as February 9, 2015, by way of correspondence that Optis Wireless sent to Kyocera.

53.  Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '792 Patent.

54.  For example and without limitation, operation and use of the Kyocera Mobile Communication Devices (including but not limited to DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque[XT], Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE), which incorporate functionalities and associated software and hardware components installed and configured by Kyocera in compliance with the LTE Standards, including but not limited to 3GPP TS 36.201 Sections 1 and 4, 3GPP TS 36.211 Section 5, 3GPP TS 36.212 Section 5, 3GPP TS 36.213 Section 10, and 3GPP TS 36.331 Section 6, infringe one or more claims of the '919

Patent, including but not limited to claim 1.[4] The use and operation of these Kyocera Mobile Communication Devices by Kyocera, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '792 Patent.

55. Kyocera's affirmative acts of selling the Kyocera Mobile Communication Devices, causing the Kyocera Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the Kyocera Mobile Communication Devices have induced and continue to induce Kyocera's manufacturers, resellers, and end-users to make or use the Kyocera Mobile Communication Devices in their normal and customary way to infringe one or more claims of the '792 Patent.

56. Through its manufacture and sale of the Kyocera Mobile Communication Devices, Defendants specifically intend that Kyocera's manufacturers, resellers and end-users directly infringe one or more claims of the '792 Patent. Kyocera has knowledge of the '792 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe by using, selling exporting, supplying and/or distributing within the United States Kyocera Communication Devices for resale to others, such as resellers and end-use customers. Kyocera is aware that such actions would induce actual infringement. Further, Defendants remain aware that these normal and customary activities would infringe the '792 Patent.

57. For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the Kyocera Mobile Communication Devices, Defendants willfully provide manuals and support to resellers and end-use customers regarding the use and operation of Kyocera's

---

[4] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

products in a way that infringes one or more claims of the '792 Patent. Specifically, Kyocera willfully provides manuals and support through sales of the Kyocera Communication Devices, through its website http://www.kyoceramobile.com/[5], by telephone, and through other means of communication. When resellers and end-use customers follow such instructions and support, they directly infringe the '792 Patent. Kyocera knows or should have known that by willfully providing such instructions and support, resellers and end-use customers follow those instructions and support, and directly infringe the '792 Patent.

58. Accordingly, Kyocera has performed and continues to perform the acts that constitute indirect infringement, and would induce actual infringement, with the knowledge of the '792 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

59. Kyocera indirectly infringes one or more claims of the '792 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

60. Direct infringement of one or more claims of the '792 Patent is the result of activities performed by Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices.

61. The Kyocera Mobile Communication Devices (including but not limited to the DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce,

---

[5] For example, the Kyocera Hydro AIR manual is available at http://www.kyoceramobile.com/hydro-air/Hydro-AIR-User-Guide-ATT_en.pdf (last accessed December 3, 2015). Kyocera includes instructions to a user or reseller of the Hydro AIR, and is aware that the '792 Patent is infringed when those instructions are followed. Manuals and support for each of the infringing Kyocera Mobile Communications Devices are available at www.kyoceramobile.com.

Torque, Torque[XT], Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE), incorporate functionalities and associated software and hardware components installed and configured by Kyocera in compliance with the LTE Standards, including but not limited to 3GPP TS 36.201 Sections 1 and 4, 3GPP TS 36.211 Section 5, 3GPP TS 36.212 Section 5, 3GPP TS 36.213 Section 10, and 3GPP TS 36.331 Section 6, infringe one or more claims of the '792 Patent, including but not limited to claim 1.[6] On information and belief, these functions and operations cannot work in an acceptable manner absent theses software and hardware components that Defendants configure, install, and include in the Kyocera Mobile Communication Devices for the purposes of performing such functions and operations.  On information and belief, Kyocera has designed, configured, and installed such software and hardware to entice users of the Kyocera Mobile Communication Devices to use and operate these functionalities and to do so in a manner compliant with the LTE Standards.

62.     The software and hardware components installed and configured by Kyocera in compliance with the above LTE Standards, do not constitute a staple article or commodity of commerce.  Moreover, use of the same is required for the operation of a Kyocera Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

63.     The software and hardware components installed and configured by Defendants in compliance with the above LTE Standards are each a material part of the invention of the '792 Patent, are especially made for the infringing manufacture, sale and

---

[6] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

use of Kyocera Mobile Communication Devices, and have no substantial non-infringing uses.

64.    Accordingly, Defendants offer to sell, or sell within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '792 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.    Defendants provide to others Kyocera Mobile Communication Devices with distinct and separate components that have no substantial non-infringing uses.

65.    Defendants' continued infringement of the '792 Patent has damaged and will continue to damage PanOptis.

## COUNT III.

## CLAIM FOR PATENT INFRINGEMENT OF THE '949 PATENT

66.    PanOptis repeats and realleges the allegations in paragraphs 1-65 as though fully set forth herein.

67.    Defendants have directly infringed and continue to directly infringe the '949 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '949 Patent including, but not limited to, mobile telephones.  The accused wireless communication devices that infringe the one or more claims of the '949 Patent include, but are not limited to, at least the DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque,

Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE.  Further discovery may reveal additional infringing products and/or models.

68.     Defendants have and continue to indirectly infringe the '949 Patent by inducing infringement by others of one or more claims, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

69.     Kyocera received actual notice of the '949 Patent at least as early as February 9, 2015, by way of correspondence that Optis Wireless sent to Kyocera.

70.     Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '949 Patent.

71.     For example and without limitation, operation and use of the Kyocera Mobile Communication Devices (including but not limited to the DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE), which incorporate functionalities and associated software and hardware components installed and configured by Kyocera in compliance with the LTE Standards, including but not limited to 3GPP TS 36.321 Section 5, 3GPP TS 36.211 Section 6, and 3GPP TS 36.213 Sections 8 and 9, infringe one or more claims of the '949 Patent, including but not limited to claim 18.[7]  The use and operation of these Kyocera Mobile Communication Devices by Kyocera, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '949 Patent.

---

[7] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

72.     Kyocera's affirmative acts of selling the Kyocera Mobile Communication Devices, causing the Kyocera Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the Kyocera Mobile Communication Devices have induced and continue to induce Kyocera's manufacturers, resellers, and end-users to make or use the Kyocera Mobile Communication Devices in their normal and customary way to infringe one or more claims of the '949 Patent.

73.     Through its manufacture and sale of the Kyocera Mobile Communication Devices, Defendants specifically intend that Kyocera's manufacturers, resellers and end-users directly infringe one or more claims of the '949 Patent.  Kyocera has knowledge of the '949 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe by using, selling exporting, supplying and/or distributing within the United States Kyocera Communication Devices for resale to others, such as resellers and end-use customers.  Kyocera is aware that such actions would induce actual infringement.  Further, Defendants remain aware that these normal and customary activities would infringe the '949 Patent.

74.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the Kyocera Mobile Communication Devices, Defendants willfully provide manuals and support to resellers and end-use customers regarding the use and operation of Kyocera's products in a way that infringes one or more claims of the '949 Patent.  Specifically, Kyocera willfully provides manuals and support through sales of the Kyocera Communication Devices, through its website http://www.kyoceramobile.com/[8], by telephone, and through

---

[8] For example, the Kyocera Hydro AIR manual is available at http://www.kyoceramobile.com/hydro-air/Hydro-AIR-User-Guide-ATT_en.pdf (last accessed December 3, 2015). Kyocera includes instructions to a

other means of communication.  When resellers and end-use customers follow such instructions and support, they directly infringe the '949 Patent.  Kyocera knows or should have known that by willfully providing such instructions and support, resellers and end-use customers follow those instructions and support, and directly infringe the '949 Patent.

75.　　Accordingly, Kyocera has performed and continues to perform the acts that constitute indirect infringement, and would induce actual infringement, with the knowledge of the '949 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

76.　　Kyocera indirectly infringes one or more claims of the '949 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

77.　　Direct infringement of one or more claims of the '949 Patent is the result of activities performed by Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices.

78.　　The Kyocera Mobile Communication Devices (including but not limited to the DuraForce XD, Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, and Hydro ELITE), incorporate functionalities and associated software and hardware components installed and configured by Kyocera in compliance with the LTE Standards, including but not limited to 3GPP TS 36.321 Section 5, 3GPP TS 36.211 Section 6, and

---

user or reseller of the Hydro AIR, and is aware that the '949 Patent is infringed when those instructions are followed.  Manuals and support for each of the infringing Kyocera Mobile Communications Devices are available at www.kyoceramobile.com.

3GPP TS 36.213 Sections 8 and 9, infringe one or more claims of the '949 Patent, including but not limited to claim 18.[9]  On information and belief, these functions and operations cannot work in an acceptable manner absent theses software and hardware components that Defendants configure, install, and include in the Kyocera Mobile Communication Devices for the purposes of performing such functions and operations.  On information and belief, Kyocera has designed, configured, and installed such software and hardware to entice users of the Kyocera Mobile Communication Devices to use and operate these functionalities and to do so in a manner compliant with the LTE Standards.

79.    The software and hardware components installed and configured by Kyocera in compliance with the above LTE Standards, do not constitute a staple article or commodity of commerce.  Moreover, use of the same is required for the operation of a Kyocera Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

80.    The software and hardware components installed and configured by Defendants in compliance with the above LTE Standards are each a material part of the invention of the '949 Patent, are especially made for the infringing manufacture, sale and use of Kyocera Mobile Communication Devices, and have no substantial non-infringing uses.

81.    Accordingly, Defendants offer to sell, or sell within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '949 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an

---

[9] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Defendants provide to others Kyocera Mobile Communication Devices with distinct and separate components that have no substantial non-infringing uses.

82. Defendants' continued infringement of the '949 Patent has damaged and will continue to damage PanOptis.

## PLAINTIFFS' NON-STANDARDS-ESSENTIAL PATENT

## COUNT IV.

## CLAIM FOR PATENT INFRINGEMENT OF THE '191 PATENT

83. PanOptis repeats and realleges the allegations in paragraphs 1-82 as though fully set forth herein.

84. The '191 Patent, originally assigned to Ericsson and subsequently assigned to Plaintiffs, is not, and has not been declared, a standards-essential patent and accordingly is not subject to FRAND.

85. Defendants have directly infringed and continues to directly infringe the '191 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '191 Patent including, but not limited to, mobile telephones. The accused wireless communication devices that infringe the one or more claims of the '191 Patent include, but are not limited to, at least DuraForce XD Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, Hydro Elite, Hydro Edge, Event, Rise, and Jitterbug Touch. Further discovery may reveal additional infringing products and/or models.

86.     Defendants indirectly infringe the '191 Patent by inducing infringement by others of one or more claims, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

87.     Kyocera will receive actual notice of the '191 Patent at least as early as the filing date of this suit.

88.     Kyocera, its manufacturers, resellers, distributors and end-users of the Kyocera Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '191 Patent.

89.     For example and without limitation, operation and use of the Kyocera Mobile Communication Devices (including but not limited to DuraForce XD Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce, Torque, Torque[XT], Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM, Hydro Elite, Hydro Edge, Event, Rise, and Jitterbug Touch), which incorporate multimedia messaging functionalities and associated telephony software interfaces, and other software and hardware that Kyocera configures, installs, and includes in the Kyocera Mobile Communication Devices for the function of transmitting text messages with multimedia attachments, infringes one or more claims of the '191 Patent, including but not limited to claim 17.[10]  The manufacture, use and operation, sale, offer to sell, and importation of these Kyocera Mobile Communication Devices by Kyocera constitutes a direct infringement of one or more claims of the  '191 Patent.

90.     Kyocera's affirmative acts of selling the Kyocera Mobile Communication Devices, causing the Kyocera Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the Kyocera Mobile Communication Devices

---

[10] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

have induced and continue to induce Kyocera's manufacturers, resellers, and end-users to make or use the Kyocera Mobile Communication Devices in their normal and customary way to infringe one or more claims of the '191 Patent.

91.     Through its manufacture and sale of the Kyocera Mobile Communication Devices, Defendants specifically intend that Kyocera's manufacturers, resellers and end-users directly infringe one or more claims of the '191 Patent.  Kyocera has knowledge of the '191 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe by using, selling exporting, supplying and/or distributing within the United States Kyocera Communication Devices for resale to others, such as resellers and end-use customers.  Kyocera is aware that such actions would induce actual infringement.  Further, Defendants remain aware that these normal and customary activities would infringe the '191 Patent.

92.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the Kyocera Mobile Communication Devices, Defendants willfully provide manuals and support to resellers and end-use customers regarding the use and operation of Kyocera's products in a way that infringes one or more claims of the '191 Patent.  Specifically, Kyocera willfully provides manuals and support through sales of the Kyocera Communication Devices, through its website http://www.kyoceramobile.com/[11], by telephone, and through other means of communication.   When resellers and end-use customers follow such

---

[11] For example, the Kyocera Hydro AIR manual is available at http://www.kyoceramobile.com/hydro-air/Hydro-AIR-User-Guide-ATT_en.pdf (last accessed December 3, 2015).  Kyocera includes instructions to a user or reseller of the Hydro AIR, and is aware that the '191 Patent is infringed when those instructions are followed.  Manuals and support for each of the infringing Kyocera Mobile Communications Devices are available at www.kyoceramobile.com.

instructions and support, they directly infringe the '191 Patent.  Kyocera knows or should

have known that by willfully providing such instructions and support, resellers and end-use

customers follow those instructions and support, and directly infringe the '191 Patent.

93.     Accordingly, Kyocera has performed and continues to perform the acts that

constitute indirect infringement, and would induce actual infringement, with the knowledge

of the '191 Patent and with the knowledge or willful blindness to the fact that the induced

acts would constitute infringement.

94.     Kyocera indirectly infringes one or more claims of the '191 Patent by

contributing to infringement by others, such as manufacturers, resellers and end-use

customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United

States.

95.     Direct infringement of one or more claims of the '191 Patent is the result of

activities performed by Kyocera, its manufacturers, resellers, distributors and end-users of

the Kyocera Mobile Communication Devices.

96.     The Kyocera Mobile Communication Devices (including but not limited to

the DuraForce XD Hydro VIEW, Hydro AIR, Hydro WAVE, DuraScout, DuraForce,

Torque, Torque$^{XT}$, Brigadier, Hydro LIFE, Hydro ICON, Hydro VIBE, Hydro XTRM,

Hydro Elite, Hydro Edge, Event, Rise, and Jitterbug Touch), incorporate multimedia

messaging functionalities and associated telephony software interfaces, and other software

and hardware that Kyocera configures, installs, and includes in the Kyocera Mobile

Communication Devices for the function of transmitting text messages with multimedia

attachments, infringes one or more claims of the '191 Patent, including but not limited to

claim 17.[12] On information and belief, these functions and operations cannot work in an acceptable manner absent theses software and hardware components that Defendants configure, install, and include in the Kyocera Mobile Communication Devices for the purposes of performing such functions and operations.  On information and belief, Kyocera has designed, configured, and installed such software and hardware to entice users of the Kyocera Mobile Communication Devices to use and operate these functionalities and to do so in a manner that infringes the '191 Patent.

97.     The software and hardware components installed and configured by Kyocera to practice the patented operations and structures, do not constitute a staple article or commodity of commerce.  Moreover, use of the same is required for the operation of a Kyocera Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

98.     The software and hardware components installed and configured by Defendants are each a material part of the invention of the '191 Patent, are especially made for the infringing manufacture, sale and use of Kyocera Mobile Communication Devices, and have no substantial non-infringing uses.

99.     Accordingly, Defendants offer to sell, or sell within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '191 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendants provide to others Kyocera Mobile

---

[12] PanOptis incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to Local Patent Rule 3-1.

Communication Devices with distinct and separate components that have no substantial non-infringing uses.

100.    Defendants' continued infringement of the '191 Patent has damaged and will continue to damage PanOptis.

## COUNT V.

## WILLFUL INFRINGEMENT

101.    PanOptis repeats and realleges the allegations in paragraphs 1-100 as though fully set forth herein.

102.    Defendants have willfully infringed and/or do willfully infringe each of the '919, '792 and '949 Patents.

103.    Defendants received actual notice of each of the '919, '792 and '949 Patents at least as early as February 9, 2015 by way of correspondence that Optis Wireless sent to Kyocera.

104.    After receiving such actual notice of the '919, '792 and '949 Patents, Kyocera proceeded to make, use, test, sell and offer to sell in this District and elsewhere in the United States, and import into this District and elsewhere in the United States, the Kyocera Mobile Communication Devices.

105.    On information and belief, Kyocera engaged in such activities despite an objectively high likelihood that its actions constituted infringement of valid patents. Kyocera knew or should have known that its actions would cause direct infringement of each of the '919, '792 and '949 Patents.

## COUNT VI.

## DECLARATORY JUDGMENT

106.    PanOptis repeats and realleges the allegations in paragraphs 1-105 as though fully set forth herein.

107.    Optis Wireless owns patents essential to the GSM, UMTS, and LTE standards, and PPM possesses the full rights to license these patents to Kyocera. Without a license, Kyocera will infringe upon Plaintiffs' Essential Patents.

108.    Plaintiffs, as possessing the full rights in patents that are essential and remain essential to the GSM, UMTS, and/or LTE standards, are obligated to offer Kyocera a license to Plaintiffs' Essential Patents on FRAND terms.

109.    Kyocera makes, has made, sells, leases, disposes of, repairs, uses, and operates products and uses methods that practice the GSM, UMTS, and/or LTE standards and is therefore required to obtain a license under Plaintiffs' Essential Patents.

110.    There is a case or controversy, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, as to whether Plaintiffs have complied with their commitments to offer a license their Essential Patents on FRAND terms. Plaintiffs have in good faith presented Kyocera with FRAND terms for a worldwide license under Plaintiffs' entire portfolio of Essential Patents. Kyocera, however, has rebuffed and continues to rebuff Plaintiffs' good faith efforts to negotiate a license with Kyocera.

111.    Plaintiffs are entitled to a declaratory judgment that they have complied with their obligations arising from their licensing declarations to ETSI, ETSI's IPR Policy, and any applicable laws during their negotiations with Kyocera concerning a worldwide license under Plaintiffs' Essential Patents.

## DEMAND FOR JURY TRIAL

PanOptis hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PanOptis respectfully requests that this Court enter judgment in their favor and grant the following relief:

A.      Adjudge that the Defendants have directly infringed each of the Asserted Patents;

B.      Adjudge that the Defendants have contributorily infringed, and/or induced the infringement of each of the '919, '792 and '949 Patents;

C.      Adjudge that the Defendants' infringement of the '919, '792 and '949 Patents was willful, and that Defendants' continued infringement of the Asserted Patents is willful;

D.      Award PanOptis damages in an amount adequate to compensate PanOptis for the Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

E.      Award enhanced damages by reason of the Defendants' willful infringement of the '919, '792 and '949 Patents, pursuant to 35 U.S.C. § 284;

F.      Award PanOptis pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs (including all disbursements);

G.      Award PanOptis a post-judgment forward royalty;

H.      Enter declaratory judgment that Plaintiffs have complied with their obligations arising from their licensing declarations to ETSI, ETSI's IPR Policy, and any applicable laws during their negotiations with Defendants concerning a worldwide license under Plaintiffs' Essential Patents;

I.      Order an accounting for damages; and

J.      Award such other relief as the Court may deem appropriate and just under

the circumstances.

DATED: January 17, 2016

Respectfully submitted,

By:  */s/ J. Cary Gray*
J. Cary Gray (Lead Counsel for PPM)
Texas Bar No. 08322300
cgray@grayreed.com
James Ormiston
Texas Bar. No. 15307500
jormiston@grayreed.com
Michael Ellis
Texas Bar No. 24081586
mellis@grayreed.com
GRAY REED & MCGRAW, P.C.
1300 Post Oak Blvd., Suite 2000
Houston, TX 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100

Eric S. Tautfest
Texas Bar No. 24028534
etautfest@grayreed.com
Jared Hoggan
Texas Bar No. 24065435
jhoggan@grayreed.com
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
GRAY REED & MCGRAW, P.C.
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (469) 320-6901

Eric M. Albritton (Lead Counsel for Optis
Wireless)
Texas Bar No. 00790215
ema@emafirm.com
Albritton Law Firm
PO Box 2649
Longview, TX 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

**ATTORNEYS FOR PLAINTIFFS**
**PanOptis Patent Management, LLC**
**and Optis Wireless Technology, LLC**